CR 20-177 ECT/HB

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **INDICTMENT** |
| Plaintiff, ) | |
| ) | 18 U.S.C. § 1343 |
| v. ) | 18 U.S.C. § 1957 |
| ) | 18 U.S.C. § 981(a)(1)(C) |
| KYLE WILLIAM BRENIZER, ) | 18 U.S.C. § 982(a)(1) |
| a/k/a Kyle Williams, ) | 28 U.S.C. § 2461(c) |
| ) | |
| Defendant. ) | |

The UNITED STATES GRAND JURY charges:

**General Allegations**

At times relevant to this Indictment:

*The Defendant and Related Entities*

1. Defendant KYLE WILLIAM BRENIZER was a resident of St. Paul, in the State and District of Minnesota. Defendant BRENIZER was subject to multiple felony criminal charges pending in the State of Minnesota in which he personally appeared in court proceedings prior to May 2020, including but not limited to, charges for check forgery, identify theft, and theft by swindle.

2. True-Cut Construction LLC ("True-Cut") was a Minnesota corporation formed in or around December 2015. True-Cut operated as a contracting and construction company with its principal business location in Brooklyn Park, Minnesota. Defendant BRENIZER was True-Cut's registered agent, manager, and 100% owner.

3. In or about August 2018, True-Cut and defendant BRENIZER were subject to an enforcement action by the Minnesota Department of Labor and Industry

SCANNED
AUG 19 2020
U.S. DISTRICT COURT MPLS

and were ordered to cease and desist from acting or holding themselves out as a residential building contractor, remodeler, or roofer. Since in or about December 2019, True-Cut's contractor license issued by the Minnesota Department of Labor and Industry expired and has not been renewed by True-Cut or defendant BRENIZER.

4. Since at least 2016 through at least 2019, defendant BRENIZER did not report to the State of Minnesota the payment of any wages to a single True-Cut employee. Since at least 2018, defendant BRENIZER did not submit any Form 944 federal tax returns to the United States Internal Revenue Service for True-Cut Construction.

5. Interactive Innovators, Inc., ("Interactive Innovators") was a Minnesota corporation formed in or around January 1997, which was administratively dissolved in or around April 2005. Interactive Innovators remained dissolved from in or around April 2005 until on or about April 23, 2020, on which date the entity was reinstated by defendant BRENIZER who, under the alias "Kyle Williams," listed himself as the chief executive officer of Interactive Innovators.

### The U.S. Small Business Administration

6. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

7. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

*CARES Act and Paycheck Protection Program*

8. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

9. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to certify, among other things: (a) that the small business was in operation on February 15, 2020; (b) average monthly payroll expenses; and (c) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses. Applicants must meet (and certify) certain requirements,

including that the small business was in operation on February 15, 2020, had employees, and had average monthly payroll costs.

10. The PPP loan application further required the business (through its authorized representative) to certify whether the applicant or any individual owning 20 percent or more of the equity of the business was subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought.

11. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

12. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

*Relevant Financial Institutions and Related Entities*

13. Bank 1 was a federally insured financial institution based in Salt Lake City, Utah. Bank 1 participated in the SBA's PPP as a lender, and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

14. Bank 2 was a federally insured financial institution based in Fargo, North Dakota, with multiple branch locations, including in Moorhead, Minnesota. Defendant BRENIZER maintained personal accounts at Bank 2 for which he was the sole account signatory.

15. Company 1 was a publicly traded company that specialized in processing credit card payments and small-business lending. Company 1 was based in Redwood City, California. Company 1 participated in the SBA's PPP by, among, other things, acting as a service provider between small businesses and certain banks, including Bank 1. Small businesses seeking PPP loans could apply through Company 1 for PPP loans. Company 1 would review the loan applications. If a loan application received by Company 1 was approved for funding, a partner bank, such as Bank 1, disbursed the loan funds to the applicant.

16. Company 2 was a FINRA-registered broker-dealer that managed self-directed cash accounts for its customers and related expense management services through its website and mobile applications. Company 2 was based in San Francisco, California. Defendant BRENIZER, under the alias "Kyle Williams," maintained an account at Company 2 in the name of Interactive Innovators.

## COUNTS 1-2
(Wire Fraud)

17. Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

18. Beginning in or around April 2020, and continuing until at least in or around June 2020, in St. Paul, Minnesota, within the District of Minnesota, and elsewhere, the defendant

**KYLE WILLIAM BRENIZER,**

did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

19. More specifically, defendant BRENIZER devised a scheme to defraud Bank 1, Company 1, and the SBA by filing false and fraudulent applications for PPP funds. The purpose of the scheme was for defendant BRENIZER to unjustly enrich himself by obtaining PPP loan proceeds under false and misleading pretenses, including by making false statements about the number of True-Cut employees, payroll expenses, the intended use of the loan proceeds, and defendant BRENIZER's criminal history.

20. In furtherance of the scheme, on or about May 1, 2020, defendant BRENIZER submitted a false and misleading PPP application to Bank 1 and Company 1 in the name of True-Cut seeking approximately $841,000 in PPP funds ("PPP Application 1"). PPP Application 1 was signed by defendant BRENIZER. In addition, defendant BRENIZER certified that PPP Application 1 and the information provided in all supporting documents and forms was true and accurate.

21. On PPP Application 1, defendant BRENIZER falsely stated that True-Cut's average monthly payroll was $338,720 and that the company had approximately 28 employees. In addition, defendant BRENIZER submitted with the

6

PPP Application 1 what purported to be an Employer's Annual Federal Tax Return ("IRS Form 944") for True-Cut for 2019. On the purported IRS Form 944, defendant BRENIZER falsely claimed that True-Cut had paid $4,064,520 in wages, tips, and compensation.

22. It was further part of the scheme that defendant BRENIZER falsified bank account records in support of PPP Application 1 unbeknownst to Bank 1 and Company 1 at the time. More specifically, defendant BRENIZER provided Bank 1 and Company 1 with monthly statements for a personal account that he maintained at Bank 2, which defendant BRENIZER had altered and falsified to appear as "True-Cut Construction" bank account statements. In fact, and as defendant BRENIZER knew at the time, True-Cut maintained no accounts at Bank 2.

23. On or about May 5, 2020, Company 1 notified defendant BRENIZER that it did not approve the issuance of a PPP loan based on PPP Application 1.

24. In furtherance of the scheme to defraud, on or about May 12, 2020, defendant BRENIZER caused the submission of another false and misleading PPP application to Bank 1 and Company 1 in the name of True-Cut seeking approximately $841,000 in PPP funds ("PPP Application 2"). In order to conceal his involvement, defendant BRENIZER omitted his name from PPP Application 2, which he caused to be signed and submitted under the name of Individual A, whom defendant BRENIZER falsely claimed was the 90% owner of True-Cut. In fact, and as defendant BRENIZER knew, Individual A had no ownership interest in True-Cut.

25. Under the false pretense that Individual A was a 90% owner of True-Cut, defendant BRENIZER caused PPP Application 2 to be certified as containing

true and accurate information and supporting documentation, when, in fact, PPP Application 2 contained materially false and misleading claims. Among other things, PPP Application 2 falsely stated that True-Cut's average monthly payroll was $336,400 and that the company had approximately 30 employees. Defendant BRENIZER caused PPP Application 2 to be submitted to Bank 1 and Company 1 with fraudulent supporting information, namely, bogus bank account records and a purported IRS Form 944 for True-Cut for 2019 with false information about True-Cut's payroll expenses.

26. As a result of defendant BRENIZER's material falsehoods and omissions, Bank 1 eventually approved PPP Application 2. On or about May 13, 2020, Bank 1 distributed approximately $841,000 to defendant BRENIZER through a wire transfer sent to defendant BRENIZER's personal account at Bank 2.

27. It was further part of the scheme that defendant BRENIZER received approximately $841,000 in fraud proceeds, some of which he distributed and misappropriated, or attempted to distribute and misappropriate, for the personal benefit of himself and other parties in violation of the PPP's requirements. More specifically, rather than use PPP funds for permissible business expenses, such as payroll costs, mortgage interest, rent, or utilities, defendant BRENIZER instead transferred approximately $650,000 to an account at Company 2 that he controlled and was unrelated to True-Cut; made an approximately $29,000 payment to purchase a Harley-Davidson motorcycle; transferred approximately $20,000 to a personal savings account in defendant BRENIZER's name; transferred approximately $10,000

to Individual A; and spent approximately $1,185 for golf expenses, among other retail and entertainment expenditures for his personal benefit.

28. On or about the dates set forth below, in the State and District of Minnesota and elsewhere, the defendant,

**KYLE WILLIAM BRENIZER,**

for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds, as described below:

| Count | Date of Wire (on or about) | Wire |
|---|---|---|
| 1 | May 1, 2020 | Electronic submission from Minnesota of PPP Application 1, which was routed interstate through Company 1's servers outside of Minnesota |
| 2 | May 12, 2020 | Electronic submission from Minnesota of PPP Application 2, which was routed interstate through Company 1's servers outside of Minnesota |

All in violation of Title 18, United States Code, Section 1343.

### COUNT 3
(Money Laundering)

29. Paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

30. On or about May 16, 2020, in the State and District of Minnesota and elsewhere, the defendant,

**KYLE WILLIAM BRENIZER,**

knowingly engaged and attempted to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce in criminally-

deprived property of a value greater than $10,000, that is, a check of approximately $29,985 from defendant BRENIZER's personal account at Bank 2 for the purchase a Harley-Davidson motorcycle, such funds having been derived from a specified unlawful activity, namely, wire fraud.

All in violation of Title 18, United States Code, Section 1957.

## COUNT 4
(Money Laundering)

31. Paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

32. On or about May 19, 2020, in the State and District of Minnesota and elsewhere, the defendant,

**KYLE WILLIAM BRENIZER,**

knowingly engaged and attempted to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce in criminally-deprived property of a value greater than $10,000, that is, a transfer of approximately $500,000 from defendant BRENIZER's personal account at Bank 2 to Company 2, such funds having been derived from a specified unlawful activity, namely, wire fraud.

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

33. Counts 1 through 4 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections

981(a)(1)(C) and 982(a)(1), in conjunction with Title 28, United States Code, Section 2461(c).

34. Upon conviction of any of the offenses alleged in Counts 1 and 2, as set forth in this Indictment, defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the violation, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

35. Upon conviction of the offenses alleged in Count 3 and 4 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and all property traceable to such property, including, but not limited to, the sum of money involved in Counts 3 and 4.

36. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____                    _____
UNITED STATES ATTORNEY                             FOREPERSON